# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| PITT EXCAVATING LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:13-cv-00909 |
| ) | Chief Judge Haynes |
| MARY LOU PITT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff, Pitt Excavating LLC, a Tennessee limited liability company organized and incorporated under the laws of Tennessee, filed this action under 28 U.S.C. §1332, the federal diversity statute, against Defendant, Mary Lou Pitt, a Kentucky citizen, asserting claims for conversion and breach of fiduciary duty. On September 10, 2013, Plaintiff filed an emergency motion for a Temporary Restraining Order ("TRO") seeking an asset freezes and an injunction against the Defendant's sale of three hundred acres of farmland with a home, tools and equipment. After review, the Court granted relief and ordered Plaintiff to post a $50,000 bond. The Court also set a hearing on the Plaintiff's motion for a preliminary injunction

In earlier proceedings, the Court denied the Defendant's motion to dismiss. In that motion the Defendant contended that Plaintiff, Pitt Excavating LLC, was wholly owned by John W. Pitt II, who was its president and a Kentucky citizen. Defendant cited his residency at their home in Kentucky. The Defendant was the owner of this Kentucky farm and residence since her divorce from John W. Pitt II in 2008. Plaintiff's proof showed that Pitt Excavating LLC is organized and incorporated under Tennessee law with its principal place of business in Goodlettsville, Tennessee and that he, as Plaintiff's president and member, was a citizen of the State of Tennessee prior to the

filing of this action. (Docket Entry No. 18, at ¶ 1). John W. Pitt II asserted that he has had an apartment since November 2012 in Tennessee, has a valid Tennessee driver's license and pays his portion of federal taxes on income earned and apportioned in Tennessee. Id. In support, Plaintiff submits a residential apartment lease agreement entered in November 2012 for premises located in Madison, Tennessee, utility bills for that property, a Tennessee commercial driver's license issued on October 5, 2011, a Tennessee contractor license and a Tennessee post office box address for Pitt Excavating. (Docket Entry No. 21, at 7-13). The Court concluded that Plaintiff met its burden of proving citizenship for diversity purposes.

Before the Court is the Defendant's motion to reconsider the Order denying her motion to dismiss for lack of subject matter jurisdiction (Docket Entry Nos. 14 and 39).. The Court set a hearing on the Plaintiff's motion for a preliminary injunction and also entertained Defendant's proof on her motion to reconsider at that hearing. The Court denied Plaintiff's motion for a preliminary injunction by separate Order.

**A. Review of the Record**

John Pitt and the Defendant have been married and divorced three times. After their 2008 divorce, the Pitts continued to live at the Kentucky farm that the divorce decree award to the Defendant. John Pitts II worked out of the farm residence and the Defendant continued her role as bookkeeper for Pitt Excavating and managing the residence. Payments for the business and residence were paid from the Plaintiff Pitt Excavating's bank account and John Pitt II was aware of these payments. (Docket Entry No. 51-1, John Pitt's Deposition at 93, 99). The latter activity is the basis for Plaintiff's claims in this action.

As to John Pitt II's proof of his Tennessee citizenship, since November 2012, John Pitt II leased an apartment in Madison, Tennessee where his girlfriend resides. Yet, in his affidavit, John Pitt II asserts that "[a]t least eight weeks prior to the filing of this action in September, 2013, I was a citizen of Tennessee". (Docket Entry No. 57-1). In her affidavit, John Pitt II's girlfriend asserts that only after the Defendant's initiation of eviction proceeding in Kentucky in July, 2013 to evict John Pitt II from the Kentucky residence that John Pitt II "stayed almost exclusively at the [Madison Tennessee] apartment" Id. at 19. According to the girl friend, John Pitt II resides at the Madison apartment "except when he worked late and stayed at his office", but she also stated that "John Pitt works a tremendous amount of hours". Id. John Pitt II also submitted affidavits of his employees. Ron Ross asserts that he picked up John Pitt at the Madison apartment "on several occasion" Id. at 23. Steven Baldwyn's affidavits states that his residence is near the Pitt Excavating office in Kentucky and he observed John Pitt II leave the Pitt Excavating office at night. Id. at 21.

John Pitt did not testify at the preliminary injunction hearing, but the Defendant submitted proof from John Pitt II's deposition and John Pitt's prior statements about his residency. John Pitt II is not registered to vote in Tennessee (October 21, 2013 Transcript at 26). In 2012, John Pitt II voted in Kentucky where he is a registered voter. Id at 82 and Exhibit 3 thereto. In his affidavit dated September 13, 2013, John Pitt II stated that his address was "1840 Peden Mill Road Franklin, Kentucky". Id. at 49. In his July 23, 2013 objection to the Defendant's eviction proceeding, John Pitt's counsel asserted that John Pitt II and the Defendant "have in actuality continued living on the marital estate together " Id. at Exhibit 1 thereto.

As to the property at issue in this action, in his divorce decree, citing concerns about his creditors, John Pitt II stated: "I gave up control of virtually all my assets, including all my rewal

3

estate holdings to my ex-wife, the Petitioner herein". Id. at Exhibit 2 thereto. Despite these assertions and the divorce decree's award of the farm to the Defendant, John Pitt II has sold several of Defendant's farm tractors without the Defendant's consent. Id. at 33, 52. John Pitt II also cut numerous bales of hay on the farm property that he sold for $15,000 and kept the proceeds. Id. at 39, 40 and 42. John Pitt II has filed a materialsmen lien on the farm property in the amount of $1,726,000 that he insists represents his contributions to the farm. Id.at 45. John Pitt II has filed a petition to set aside the Kentucky divorce decree on grounds that the decree is unconscionable. Id at 106. John Pitt II receives to $127,451 in federal arm subsidies for his Kentucky property and $42 for his property in Robertson County, Tennessee. Id at Exhibit 4 thereto.

John Pitt's son testified at the preliminary injunction hearing that his father continually resided at the Kentucky farm until the eviction order. John Pitt II has since threatened to add his son as a party to this action.

### B. Conclusions of Law

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim for lack of subject matter jurisdiction that may consist of either a "facial attack" or a "factual attack." O'Bryan v. Holy See, 556 F.3d 361, 375 (6th Cir. 2009).

> "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." And, "[w]hen reviewing a facial attack, a district court takes the allegations in the complaint as true....If those allegations establish federal claims, jurisdiction exists." However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

Id. at 375-76 (citations omitted). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). On a factual attack, "no

presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (citation omitted). "[A] trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of proof that jurisdiction exists under 12(b)(1). RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996).

Yet, federal courts are not allowed to assume jurisdiction and proceed to resolve an action on its merits. Patterson v. Haskins, 470 F.3d 645, 666 (6th Cir. 2006). "[F]ederal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists. This duty applies irrespective of the parties' failure to raise a jurisdictional challenge on their own, and if jurisdiction is lacking, dismissal is mandatory." Campanella v. Commerce Exchange Bank, 137 F.3d 885, 890 (6th Cir.1998) (citations omitted). "[F]ederal jurisdiction is tested according to the facts as they exist at the time an action is initiated and that diversity jurisdiction, once acquired, is not defeated by events occurring subsequent to the commencement of the action." Television Reception Corp. v. Dunbar, 426 F.2d 174, 177 (6th Cir. 1970).

"The general rule is that all unincorporated entities—of which a limited liability company is one—have the citizenship of each partner or member." Delay v. Rosenthal Collins Group, LLC, 585 F.3d 1003, 1005 (6th Cir. 2009). Thus, "a limited liability company has the citizenship of each of its members." Id. (citing Homfeld II, L.L.C. v. Comair Holdings, Inc., 53 F. App'x 731, 732–33 (6th Cir.2002)). "State citizenship for purposes of the diversity requirement is equated with domicile." Von Dunser v. Aronoff, 915 F.2d 1071, 1072 (6th Cir.1990).

5

Domicile, however, is not synonymous with a person's residence. Kaiser v. Loomis, 391 F.2d 1007, 1009 (6th Cir.1968). "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989). "Thus, domicile is an individual's permanent place of abode where he need not be physically present, and residence is where the individual is physically present much of the time. An individual consequently may have several residences, but only one domicile." Eastman v. Univ. of Mich., 30 F.3d 670, 673 (6th Cir. 1994). Further, "a previous domicile is not lost until a new one is acquired." Von Dunser, 915 F.2d at 1072.

"To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." Stifel v. Hopkins, 477 F.2d 1116, 1120 (6th Cir. 1973). Both of these factors are indispensable. Kaiser, 391 F.2d at 1009. "'Mere absence from a fixed home, however long or continued, cannot in and of itself effect a change in domicile.'" Id. (quoting Mitchell v. United States, 88 U.S. 350, 353 (1874)). A plaintiff bears the burden of proving citizenship for diversity purposes, but once it is shown, the burden shifts to the defendant to show that domicile has changed. Kaiser, 391 F.2d at 1010. Courts consider several factors in determining a person's domicile, including:

> [c]urrent residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; memberships in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver licenses and other automobile registration; [and] payment of taxes.

13B Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3612 (2d ed.1984).

Another set of governing principles applicable here was stated in Gross v. Hougland, 712 F.2d 1034, 1035 (6th Cir. 1983) where "[s]everal defendants jointly moved to dismiss, asserting alternate grounds for dismissal. First, the defendants argued that the district court lacked subject-matter jurisdiction because diversity of citizenship was manufactured by the appointment of the plaintiff as receiver". Although that controversy involved 28 U.S. C. § 1359 on assignment of claims, the Sixth Circuit articulated several governing principles that this Court deems applicable here.

> By enacting Sec. 1359, Congress sought to assure that ordinary contract and tort litigation is not diverted to the federal courts by litigants using devices to create the appearance, but not the substance, of federal diversity jurisdiction.. ...**[F]ederal courts consider only those "cases that 'really and substantially' involve a dispute within the jurisdiction of the federal courts" by assuring that the federal courts do not assume jurisdiction when the dispute is local, rather than interstate, in character.** ... [S]everal courts have noted that no meaningful distinction exists between an assignment of a claim to a disinterested party for the purpose of creating diversity of citizenship and the appointment of a disinterested fiduciary to create diversity of citizenship; in either event, [where] **the party has attempted to create diversity of citizenship merely by complying with the formalities of state law. [C]reation of diversity of citizenship by assignment is a "manufacture of jurisdiction" and thus, "improperly or collusively made". Thus, these courts have concluded that a "party ... has been improperly or collusively made or joined ..." 28 U.S.C. Sec. 1359, when the primary aim of the transaction or appointment is to manufacture federal jurisdiction.**

Id. at 1037-38 (Kramer v. Caribbean Mills, 394 U.S. 823, 828-29 (1969) with other internal citations and footnote omitted). In those instances, the Sixth Circuit stated: "In the context of Sec. 1359, the plaintiff must show that the primary purpose for the appointment of the fiduciary is not to manufacture diversity of citizenship". Id. at 1038.

Here, the Court reconsiders its earlier ruling denying the Defendant's motion to dismiss for lack of subject matter jurisdiction. Under the applicable law, "the general rule is that all

unincorporated entities—of which a limited liability company is one—have the citizenship of each partner or member." Delay, 585 F.3d at 1005. Plaintiff is a limited liability company and John Pitt II its sole owner and controlling person, is a citizen of Kentucky. Based upon the Defendant's proof and the above quoted legal principles, the Court finds that Plaintiff has manufactured facts to invoke the Court's diversity jurisdiction. The Defendant's proof convinces this Court that John Pitt II, the sole owner and controlling person of the Plaintiff, has attempted to circumvent the Kentucky state courts by acquiring transitory ties to Tennessee to seek relief in this Court to nullify the Defendant's ownership rights in the Kentucky farm and its assets. The Kentucky state divorce decree awarded thiose properties to the Defendant. Plaintiff's office and the instruments of its business are in Kentucky. Based upon John Pitt II's statements to the state courts in the divorce and eviction proceedings, John Pitt II was and is a citizen of Kentucky. John Pitt II voted in the 2012 election in Kentucky where he is a registered voter. Plaintiff's ties to Tennessee are at best tenuous and are manufactured. John Pitt II's ties to Tennessee are also tenuous and manufactured to create a legal construct to invoke this Court's diversity jurisdiction and attempt to control property that John Pitt II and the Kentucky state court awarded to the Defendant.

Accordingly, for these reasons, the Court concludes that Defendant's motion to reconsider should be granted and the Defendant's motion to dismiss for lack of subject matter jurisdiction should be granted. The prior Order awarding a temporary restraining order is vacated. Pursuant to 28 U. S. C. §1927, the Court awards the Defendant her attorney's fees and costs for the Plaintiff's vexatious and unjustified litigation in this Court.

An appropriate Order is filed herewith.

**ENTERED** this _17th_ day of December, 2013.

William J. Haynes, Jr.
Chief Judge
United States District Court